**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                     CRIMINAL ACTION NO. 2:09-cr-00063

TIMMY BOWYER,

                Defendant.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the defendant's Motion to Suppress evidence obtained as a result of the search of the defendant's property [Docket 21] and Motion to Suppress statements made at the time of or after the defendant's arrest [Docket 22]. I held pretrial motions hearings on July 21, August 3, and August 4, 2009. After considering the parties' written and oral arguments, and weighing the testimony from witnesses for both sides, these motions are now ripe for review. For the reasons stated below, the motions are **DENIED**.

**I. Motion to Suppress Evidence**

    A. *Background*

The following facts are undisputed: Sergeant Jason Davis, of the West Virginia State Police, in plain clothes and in an unmarked car, drove to the defendant's residence on the afternoon of March 5, 2009, to conduct a "knock-and-talk" to investigate allegations of stolen property. Sgt. Davis walked up to the front door of the residence and spoke with the defendant's wife, who was inside. Sgt. Davis asked "Where's Timmy?" and the defendant's wife indicated that the defendant

was in the backyard or garage.  Sgt. Davis then walked to the side door of the garage and observed the defendant inside, holding what Sgt. Davis took to be a bag of cocaine.  Sgt. Davis arrested the defendant, applied for a search warrant, and subsequently searched the premises.

B. *The Parties' Arguments*

The defendant argues that Sgt. Davis's entry onto his property without a warrant constituted an illegal search. The defendant claims that Sgt. Davis violated his right to privacy by entering his property without a warrant and ignoring "No Trespassing"and other such signs and closed gates. The defendant also argues that Sgt. Davis did not receive consent from the defendant's wife to approach the garage, an approach which, according to the defendant, required Sgt. Davis to walk past an additional gate and sign.  Moreover, the defendant contends that Sgt. Davis reentered the garage after he had taken the defendant into custody, but before the search warrant issued, and began to unlawfully remove items from the garage prior to the time of the issuance of the warrant.

The government argues that Sgt. Davis was lawfully on the defendant's property because there were no conspicuous "No Trespassing" signs or other signs to that effect, and further that no closed gate impeded Sgt. Davis's approach to the garage.  Second, the government argues that the defendant's wife gave her consent to Sgt. Davis's entry into the backyard area by directing him there.  The government also argues that observations by law enforcement officers of contraband in plain sight are not searches within the meaning of the Fourth Amendment**,** and thus that Sgt. Davis's observation of incriminating evidence through the allegedly open garage door does not constitute a search protected by the Fourth Amendment.

C.  *Fourth Amendment Law*

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  The "touchstone" of Fourth Amendment analysis is "the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'"  *Oliver v. U.S.*, 466 U.S. 170, 177 (1984) (quoting *Katz v. U.S.*, 399 U.S. 347, 360 (1967)).  As the Supreme Court of the United States has explained, "The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as "reasonable."'"  *Oliver,* 466 U.S. at 177 (quoting *Katz*, 399 U.S. at 361).  Because Fourth Amendment protection depends on society's reasonable expectations regarding privacy, "[n]o single factor" determines whether Fourth Amendment protection will apply to any given place.  *Id.*

A homeowner has a right to privacy in the curtilage surrounding his residence.  *See Oliver v. U.S.,* 466 U.S. 170, 180 (1984); *U.S. v. Breza,* 308 F.3d 430, 433–34 (4th Cir. 2002).  Ordinarily, however, there is no Fourth Amendment violation when the police conduct a knock-and-talk, that is, when the police knock on a resident's door or otherwise approach the residence seeking to speak to the inhabitants.  *See Rogers v. Pendleton*, 249 F.3d 279, 289 (4th Cir. 2001); *Alvarez v. Montgomery County*, 147 F.3d 354, 357 (4th Cir. 1998).  Courts have held that "[a]bsent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach and knock on the front door."  *People v. Kozlowski*, 505 N.E.2d 611, 612 (N.Y. 1987).

Homeowners, however, may take measures to impede or block access to the curtilage, and in those instances such privacy enhancements may prevent police access in a knock-and-talk.  *See Edens v. Kennedy*, 112 Fed. App'x 870, 875 (4th Cir. 2004); *see also State v. Somfleth*,

8 P.3d 221, 227 (Or. Ct. App. 2000) ( "A homeowner can abrogate the presumption of implied consent to approach the front door by undertaking sufficient steps to exclude casual visitors from the front yard.").  In conducting a knock-and-talk, police officers may only do what private citizens legitimately may do, and if the curtilage is protected from entry by the public, then police officers also are barred from entry.  *Edens*, 112 Fed. App'x at 875-76; *State v. Brocuglio*, 779 A.2d 793, 799–800 (Conn. App. Ct. 2001), *aff'd* 826 A.2d 145 (2003).  The Fourth Circuit has held that "[w]hen such [manifest] intent [to exclude uninvited visitors] would be apparent to a reasonable officer, the police may not enter the enclosed area without a warrant or exigent circumstances."  *Edens*, 112 Fed. App'x at 876.  Such an intent may be apparent if, for example, locked gates and "No Trespassing" signs surround the curtilage.  *See id.* at 875; *see also Madruga v. County of Riverside,* 431 F. Supp. 2d 1049, 1059–64 (C.D. Cal. 2005); *U. S. v. Hambelton*, No. 108cr26-SPM, 2009 WL 722284, at *2-4 (N.D. Fla. Mar. 18, 2009); *Robinson v. Commonwealth*, 625 S.E.2d 651, 658 (Va. Ct. App. 2006); *State v. Ridgeway*, 790 P.2d 1263 (Wash. Ct. App. 1990).

     D.  *Findings*

The dispositive question is whether the defendant has manifested an intent that "would be apparent to a reasonable officer" to preserve his curtilage area as private.  *Edens*, 112 Fed. App'x at 876.  I **FIND** that the testimony of Sgt. Davis that there were no conspicuous "No Trespassing" signs and that there was no closed gate or fence enclosing the garage to be credible. Sgt. Davis's testimony was corroborated by Cpl. Williams, Investigator Rowe, Trooper Adkins, Sgt. Ayers, Cpl. Jiles, and Lucas Adams, whom I also find to be credible witnesses. Additionally, the pictures taken by the police the night of the search and admitted into evidence

-4-

reveal that the gate around the house did not have a "No Trespassing" sign on it.  The pictures also show that there was no gate or fence enclosing the garage area.

I did not find the defendant's testimony to be at all credible.  He contradicted himself several times while testifying.  The defendant was also obviously reluctant to answer the government's questions on cross-examination.  Furthermore, the defendant's testimony that there were "No Trespassing" signs and other such signs posted on his property was belied by the photographs showing the defendant's residence and surrounding property on the night of the search, and the photographs showing the property on May 12, 2009.  The photographs from the night of the search do not show any "No Trespassing" signs on the gate and fence surrounding the defendant's home or any gate and fence surrounding the garage area.  The defendant admits that the signs were not present in the days and weeks following March 5, 2009, but cannot account for their disappearance.

Moreover, the defendant's testimony conflicts with that of his wife and the other defense witnesses, and with the physical evidence, with regard to the location and appearance of the signs, who put them up, and how long they have been there.  For example, the parties agree that the faded "No Trespassing" sign on one of the telephone poles had been on the pole long before, after, and during March 5, 2009.[1]  The defendant, however, testified that he personally put the sign up only four years ago, and that it was red or orange and black at that time.  Transcript of July 21, 2009 Motions Hearing at 141–42.  In light of the appearance of this sign and the other

---

[1]  I believe that this particular "No Trespassing" sign was present on the date in question.  However, a person walking up to the defendant's residence would most likely not notice the sign because of its extremely faded appearance and its location far in front of the property.  Accordingly, I **FIND** that the sign did not manifest an intent by the defendant to keep the curtilage private and inaccessible to members of the public.  *See Edens*, 112 Fed. App'x at 876.

witnesses' credible testimony that this sign had been there for many years, the defendant's testimony is implausible.  Furthermore, his lack of knowledge or certainty regarding the signage at issue undercuts his argument that he had manifested a clear intent to exclude the public from his property.

Additional discrepancies regarding the testimony of the defendant's witnesses are carefully documented in the government's brief.  I do not need to discuss those discrepancies. The defendant attempts to rebut the government's witnesses' testimony by stating in a conclusory manner that "there can be no serious doubt . . . that the signs and the gate [to the garage] were there" on March 5, 2009.  Supp. Mem. in Support of Mtn. to Suppress at 3 n.2.  Yet the government's witnesses' testimony, particularly when coupled with the physical evidence, on this issue is significantly more credible than that of the defendant's witnesses.  Thus, I **FIND** that there was no clear indication to the police that they were barred from entry onto the curtilage and that there was thus no Fourth Amendment violation when Sgt. Davis approached the house and garage area.

Whether the defendant's wife, Mrs. Bowyer, consented to Sgt. Davis's approaching the garage is also disputed.  The facts at issue can be reduced to Mrs. Bowyer's testimony against Sgt. Davis's.  Nevertheless, it is undisputed that Mrs. Bowyer, upon being asked "Where's Timmy?," simply indicated that Sgt. Davis could find the defendant in the backyard or garage area.  She did not treat Sgt. Davis like one would treat a trespasser or other person who was barred from entering the property.  Her implied consent would probably not have been explicit enough to justify a warrantless search of the defendant's residence, an area entitled to the upmost Fourth Amendment protections.  *Cf. U. S. v. Castapheny*, 2007 WL 1308976 (S.D. W. Va.

-6-

2007); *Commonwealth v. Rogers*, 444 Mass. 234 (2005).  But her response sufficed to effectively purge the taint of any Fourth Amendment violation of the curtilage.  *See U. S. v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007)).  Although the curtilage is entitled to the same Fourth Amendment protection as the home, *see Oliver v. U. S.*, 466 U.S. 170 (1984), "[t]his does not mean . . . that limits on access to the home and the curtilage are equivalent."  *Eden*, 122 Fed. Appx. at 875.  The Fourth Circuit Court of Appeals has held that "even within the curtilage, the police may traverse a fence if there is no clear indication that the homeowner intended to exclude uninvited visitors."  *Id.* at 875–76.  This circuit has also held that "[t]he Fourth Amendment does not prohibit police, attempting to speak with a homeowner, from entering the backyard when circumstances indicate they might find him there."  *Alvarez v. Montgomery County,* 147 F.3d 354, 356 (4th Cir. 1998).  Although I am not comfortable with the notion that police officers may ordinarily access all parts of the curtilage in a knock-and-talk, including a detached garage set back behind a house, in this case, where the defendant's wife gave the officer implied permission to approach that area, I **FIND** no Fourth Amendment violation.

I **FIND** credible Sgt. Davis's testimony that the side door to the garage was open. Accordingly, his observation of the defendant holding a bag of cocaine in plain sight was not a search within the meaning of the Fourth Amendment since Sgt. Davis had a right to be where he was and had not conducted an illegal search by entering onto the defendant's curtilage.  *See U. S. v. Taylor*, 90 F.3d 903, 908–09 (4th Cir. 1996).  Moreover, defendant appears to no longer contest this issue.

I also **FIND** credible Sgt. Davis's testimony that the search of the premises did not commence until after the search warrant had been issued and arrived.  The government admits to

conducting a protective sweep of the property prior to the arrival of the search warrant, but contends that no actual search for evidence commenced until after the search warrant was issued. The government's witnesses support this account.  In contrast, the defendant has presented witness testimony that suggests that the government began searching the premises prior to the arrival of the warrant.  Yet even if the defendant's witness testimony is credited,[2] it does not establish that the police behavior went beyond the police's stated goals of conducting a protective sweep and securing the premises.  That security sweep was justified after the defendant was observed holding what Sgt. Davis believed to be cocaine and after he resisted arrest.  *See Maryland v. Buie*, 494 U.S. 325, 334 (1990).

Moreover, even if officers did remove items from the garage before the search warrant was issued, the fact that the warrant did issue alleviates the need for suppression because the evidence would be inevitably discovered in the garage when the warrant was executed.  *See Nix v. Williams*, 467 U.S. 431, 444 (1985); *U.S. v. Barroca*; 310 Fed. App'x 69, 70 (9th Cir. 2008); *see also U. S. v. Apker*, 705 F.2d 293, 306–07 (8th Cir. 1983).

Accordingly, I **FIND** that there are no grounds to suppress the evidence obtained during the search of the defendant's property.

## II.  Motion to Suppress Statements

It is undisputed that the defendant was read his *Miranda* rights, that he initially declined to make a statement, that he later asked to speak with Sgt. Davis, and that he then made

---

[2]  The defendant's wife testified that she saw Sgt. Davis in the garage "messing with bags and boxes" after the defendant had be arrested.  Transcript of Aug. 3, 2009 Motions Hearing at 26–28.  Other witnesses testified that they saw a man looking into the defendant's truck, that the garage door had been opened halfway, and that some items appeared to have been moved.

incriminating statements.  The government argues that the defendant volunteered these incriminating statements.  The defendant argues, based on his wife's uncorroborated testimony, that his statements were made in response to threats from a uniformed officer.

I **FIND** credible the police officers' testimony that the defendant volunteered the statements.  In contrast, the defendant and his wife's testimony on this issue do not corroborate each other, thus casting serious doubt on the veracity of her testimony.  Moreover, the allegedly threatening statements that the defendant's wife testified to hearing appear insufficient to "cause [the defendant's] will to be overborne and his capacity for self-determination to be critically impaired," *U.S. v. Braxton,* 112 F.3d 777, 783 (4th Cir. 1997) (internal citation and quotation marks omitted), which would render his statements involuntarily.[3]  Thus, I **FIND** that these statements should not be suppressed.

---

[3] The defendant's wife testified that a uniformed officer told her and her husband: "You're in a lot of trouble.  Your kids are going to be taken from you.  You're never going to see them again.  Somebody else is going to raise them."  Transcript of Aug. 3, 2009 Motions Hearing at 31.

**III. Conclusion**

For these reasons, the defendant's Motion to Suppress evidence obtained as a result of the search of the defendant's property and Motion to Suppress statements made at the time or after the defendant's arrest [Docket 21 & 22] are **DENIED**.  The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:          August 14, 2009

Joseph R. Goodwin, Chief Judge